ARMADILLO HOLDINGS, LLC,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 1:18-cv-00532-SEB-MJD
    )
TRAVELERS PROPERTY CASUALTY    )
COMPANY OF AMERICA,    )
    )
    Defendant.    )

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Now before the Court are Plaintiff's Motion for Partial Summary Judgment [Dkt. 61] and Defendant's Cross Motion for Summary Judgment [Dkt. 65]. Plaintiff Armadillo Holdings, LLC ("Armadillo") brings this declaratory judgment action against its insurer, Defendant Travelers Property Casualty Company of America ("Travelers"), alleging that Travelers breached its contractual obligations to Armadillo as well as its duty of good faith and fair dealing and that Armadillo was damaged as a result. Plaintiff seeks summary judgment on its breach of contract claims (Counts I and III of the First Amended Complaint). Travelers has cross-moved for summary judgment on all claims. For the reasons detailed below, we <u>DENY</u> Armadillo's Motion for Partial Summary Judgment and <u>GRANT</u> Traveler's Cross Motion for Summary Judgment.

## <u>Factual Background</u>

## I.    The Underlying Lawsuit

Armadillo operates multiple "Texas Roadhouse" franchised restaurants in Northern California, including one located in Tracy, California ("the Tracy Roadhouse"). On July 24, 2017, Joaquin Garcia-Vega and his two daughters stopped for dinner at the Tracy Roadhouse. Mr. Garcia-Vega, who requires the use of a walker, was seated on the collapsible seat of his walker while one of his daughters pushed him from the parking area up the handicap accessible ramp toward the entrance of the restaurant. As he was being pushed up the ramp, one of the wheels of Mr. Garcia-Vega's walker struck a broken section of the concrete, causing him to tip over and fall. Following his fall, Mr. Garcia-Vega retained counsel who, on August 11, 2017, sent a letter to Armadillo stating that Mr. Garcia-Vega intended to pursue a claim for personal injuries as a result of his fall at the Tracy Roadhouse.

At the time of the accident, Armadillo was insured by Travelers, which had issued to Armadillo a CGL Policy, Policy No. P-630-5G009387-TIL-16 ("the Travelers CGL Policy" or "the Policy"). Thus, on August 16, 2017, Armadillo notified Travelers of the incident and the notification sent by Mr. Garcia-Vega's attorney, stating: "Guest Joaquin Garcia was going to the insured's restaurant while being pushed on a walker by his daughter. The front wheel got caught in a hole in the concrete ramp and the guest fell forward. … Insured just received an attorney rep letter regarding the claim." Dkt. 63-2 at 1013. Traveler's assigned Mr. Garcia-Vega's claim to Claim Professional Joseph Tancredy, who began investigating the claim.

Several months later, on November 9, 2017, Mr. Garcia-Vega filed a lawsuit titled *Garcia-Vega v. Texas Roadhouse, Inc., et al.*, in the United States District Court for the

Northern District of California, Cause No. 5:17-CV-06516-LHK ("the *Garcia-Vega* Action"). Travelers was notified of the filing of the *Garcia-Vega* Action on November 27, 2017. The original complaint named only Armadillo's landlord, Pero Margaretic ("Mr. Margaretic"), and franchisors, Texas Roadhouse, Inc. and Texas Roadhouse Holdings, LLC, as defendants. Mr. Garcia-Vega amended his complaint on December 11, 2017, adding Armadillo as a defendant. The *Garcia-Vega* Action alleged[1] that all defendants were negligent in the design, construction, maintenance, inspection, and/or modification of the concrete ramp and also that defendants violated the Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights Act ("Unruh Act"), and the California Disabled Person's Act ("DPA") in denying him access to the Tracy Roadhouse.

As is discussed in more detail below, Mr. Margaretic tendered his defense to Armadillo and Armadillo, in turn, tendered to Travelers both its own and Mr. Margaretic's defense in the *Garcia-Vega* Action. This litigation arises from a dispute regarding Travelers's handling of its coverage and defense obligations on behalf of Armadillo and its landlord.

## II.    The Travelers CGL Policy

The CGL Policy issued by Travelers provides that Travelers will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.'" Exh. E at TRAV000759, Sec. I(A)(1)(a). "Bodily injury" is defined by the Policy as

---

[1] As is explained in more detail below, all claims in the *Garcia-Vega* Action have now been settled.

"bodily injury, sickness or disease sustained by a person …." *Id.* at TRAV_000770, Sec. V(3). Travelers instructs its claims adjusters that damages related to emotional distress, mental anguish, pain and suffering, and other forms of mental embarrassment are included within the Policy's definition of "bodily injury." Tancredy Dep., Vol. II at 170–171; Exh. K at TRAV_002430SUPP. The Policy excludes from coverage bodily injury "resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon … physical capabilities, characteristics, or condition." Exh. E at TRAV_000805.

The Policy also excludes coverage for bodily injury "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Exh. E at TRAV_000760, Sec. I(2)(b). However, the Policy provides that this exclusion "does not apply to liability … [a]ssumed in a contract or agreement that is an 'insured contract.'" *Id.* at TRAV_000760, Sec. I(2)(b)(2). An "insured contract" includes "a contract for a lease or premises." *Id.* at TRAV_00771, Sec. V(9)(a). The exception for liability assumed in an "insured contract" provides in relevant part as follows:

> Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" …, provided:
>
> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.* at TRAV_000760, Sec. I(2)(b)(2).

The Policy additionally contains an endorsement which provides "additional insured" status to "[a]ny person or organization that is a premises owner, manager or lessor and that you have agreed in a written contract or agreement to name as an additional insured …." *Id.* at TRAV_000791, Sec. E. The "additional insured" endorsement provides that "[t]he insurance provided to such premises owner, manager or lessor is excess over any valid and collectible other insurance available to such premises owner, manager or lessor, unless you have agreed in a written contract for this insurance to apply on a primary or noncontributory basis." *Id.* at TRAV_00079, Sec. E(c).

With regard to Armadillo's duties under the Policy, the Policy contains a "cooperation clause," which provides in pertinent part that the insured must "[c]ooperate with [Travelers] in the investigation or settlement of the claim or defense against the 'suit'" and "[a]ssist [Travelers] upon [its] request, in the enforcement of any right against any person or organization which might be liable to the insured because of injury or damage to which this insurance may also apply." Dkt. 63-5 at 1047–48. The Policy further provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." *Id.*

III.     **Travelers's Defense of Armadillo's Landlord and Settlement of Claims**

A.     **Armadillo's Lease Agreement with Mr. Margaretic**

As referenced above, Armadillo leases the real property from Mr. Margaretic on which the Tracy Roadhouse sits. The lease agreement between Armadillo and Mr. Margaretic ("the Lease") defines the leased "Premises" as the parcel of land described in the legal description attached to the lease, "together with all buildings, structures, drives, parking areas and other improvements now or hereafter, from time to time, located thereon." Exh. F. Art. 1, ¶ 14. Regarding maintenance of the Premises, the Lease provides:

> Subject to the provisions of <u>Article 9</u> hereof, Tenant at all times during the Term, at its expense, shall keep the Building and the Premises in good order, condition and repair, ordinary wear and tear excepted, and shall promptly make or cause to be made any and all necessary or appropriate maintenance, repairs and replacements.

*Id.* Art. 7, ¶ 7.7.

The Lease also contains the following indemnification provision:

> Subject to <u>Section 10.4</u> and provided that Landlord notifies Tenant in writing of any such third party claims within five (5) days after Landlord becomes aware of such claim, Tenant shall defend, protect, indemnify, and hold Landlord and Landlord's agents, officers, directors, employees, and contractors harmless from and against any and all injuries, costs, expenses, liabilities, losses, damages, injunctions, suits, actions, fines, penalties, and demands of any kind or nature (including reasonable attorneys' fees) arising in connection with any and all third party claims arising out of: (a) injuries occurring within the Premises; (b) any intentional conduct or negligence of Tenant or Tenant's agents, employees, or contractors; (c) any breach or default in the performance of any obligation on Tenant's part to be performed under this Lease; or (d) the failure of any representation or warranty made by Tenant herein to be true when made. This indemnity does not include the intentional or negligent acts or omissions of Landlord or its agents, officers, contractors or employees. This indemnity shall survive termination of this Lease only as to claims arising out of events that occur during the Term. Notwithstanding any provision of this Lease to the contrary, the provisions of this <u>Section 11.1</u> and Tenant's covenants to provide insurance as provided in this Lease shall in no event extend to Landlord's independent liability.

*Id.* Art. 11, ¶ 11.1.

Armadillo is required under the terms of the Lease to hold a CGL insurance policy

containing an "Additional Insured—Managers or Landlords of Premises Endorsement."

Exh. F. at Art. 10.1, TRAV_000244. The Lease does not specify whether the additional

insured coverage Armadillo must provide Mr. Margaretic applies on a primary or

contributory basis.

### B. The Tender of Mr. Margaretic's Defense

By letter dated December 13, 2017, Mr. Margaretic's insurer, Liberty Mutual,

tendered the *Garcia-Vega* Action to Armadillo, pursuant to the indemnification provision

in the Lease. Exh. 3. On December 15, 2017, Mr. Margaretic's counsel tendered the

defense and indemnity directly to Armadillo through Armadillo's counsel from Taft

Stettinius & Hollister LLP ("Taft"). Exh. 4.

On December 18, 2017, Michael Meyer from Taft notified Travelers by email that

Armadillo had been named as a defendant in the *Garcia-Vega* Action and that Armadillo

had retained the Taft firm to represent it in the litigation. Mr. Meyer also notified

Travelers that Liberty Mutual had tendered Mr. Margaretic's defense to Armadillo. Exh.

5 at TRAV_001698. That same day, Mr. Meyer contacted the other defendants in the

*Garcia-Vega* Action by email, informing them that he and the Taft firm were defending

Armadillo in the litigation. Exh. 6. Mr. Meyer also contacted Mr. Margaretic's counsel

via email and stated that Armadillo would be accepting its full defense and

indemnification. Travelers was not made aware of these communications at that time. Exh. 7.

Three days later, by letter dated December 21, 2017, Taft, on behalf of Armadillo, accepted Liberty Mutual's tender and agreed to fully defend and indemnify Mr. Margaretic in the *Garcia-Vega* Action. However, the letter advised Mr. Margaretic that:

> Armadillo Holdings' acceptance of Mr. Margaretic's tender of the defense and indemnity is based on the facts and circumstances presently known regarding the subject lawsuit. To the extent additional facts are discovered in the course of litigation to trigger Mr. Margaretic's indemnification obligations pursuant to paragraph 11.2 of the Lease, or to negate Armadillo Holdings' indemnification and defense obligations under paragraph 11.1 of the Lease, Armadillo Holdings reserves the right to rescind its acceptance of Mr. Margaretic's tender.

Exh. 8. This letter was sent without Travelers's knowledge or consent and Travelers was not copied on the letter when it was issued by Taft. Exh. 8; Exh. 9 at 229.

On December 22, 2017, Travelers emailed Liberty Mutual, acknowledging receipt of its tender on behalf of Mr. Margaretic and requesting a copy of the Lease. Liberty Mutual sent the Lease to Travelers on January 2, 2018 and notified Travelers that it was Liberty Mutual's understanding that Mr. Margaretic's tender had been accepted by "your attorney." Exh. 10 at LM10127. In that email, Liberty Mutual asked Travelers to confirm that it had accepted Mr. Margaretic's tender, without reservation, and would provide him a full defense and indemnification for all claims in the *Garcia-Vega* Action. *Id.* Travelers responded on January 10, 2018, advising Liberty Mutual that it considered Mr. Margaretic an additional insured under the Travelers CGL Policy and requested that it be provided Mr. Margaretic's Liberty Mutual Policy so that it could evaluate the

priority of coverage for him as an additional insured.  In that same communication,

Travelers also advised Liberty Mutual that the indemnity provision in the Lease did not

require Armadillo to indemnify Mr. Margaretic for his own negligence.  *Id.* at LMI0125–

127.  After they exchanged policies, Liberty Mutual emailed Travelers on January 19,

2018, stating that it "look[ed] forward to [Travelers's] confirmation of the full acceptance

under the additional insured coverage and the previously accepted contractual indemnity

tender."  *Id.* at LMI0124.

On January 29, 2018, Travelers reiterated to Liberty Mutual its position that

neither Travelers nor Armadillo owed Mr. Margaretic a full defense and indemnity

because Travelers believed he had a nondelegable duty to maintain the property "in a safe

compliant condition," and, if he had breached that duty, the Lease did not require

Armadillo to defend or indemnify Mr. Margaretic for his own negligence.  *Id.* at

LMI0121.

In that same email Travelers also confirmed that Mr. Margaretic qualified as an

additional insured under the Travelers CGL Policy, but informed Liberty Mutual that,

because the Lease did not contain a provision requiring Armadillo to provide Mr.

Margaretic additional insured coverage on a primary and noncontributory basis, the

Policy would provide only excess coverage over any other collectible insurance available

to him.  However, Travelers went on to explain that, based on conflicting "other

insurance" provisions in the Liberty Mutual and Travelers policies, it believed Travelers

and Liberty Mutual had a duty to defend and indemnify Mr. Margaretic on a co-primary

insurance basis and therefore agreed to split his defense and indemnification equally with

Liberty Mutual.  *Id.* at LMI0121–0123.  Travelers then assigned a separate adjuster, Kimberly Bouman, to handle Mr. Margaretic's defense.

On January 31, 2018, Liberty Mutual informed Travelers that it did not agree to a split of the defense and indemnification, citing the "insured contract" provision in the Travelers CGL Policy as well as the fact that "your defense attorney [Taft] sent a tender acceptance letter under the contractual indemnity provision to defend and indemnify …." *Id.* at LMI0118–0119.  Over the next two weeks, between January 31 and February 13, 2018, Travelers and Liberty Mutual continued to exchange emails regarding these issues, each side maintaining its previously stated position on its respective obligations.

During this same time period, Mr. Meyer from Taft was separately communicating on Armadillo's behalf with counsel that Liberty Mutual had retained to defend Mr. Margaretic regarding Margaretic's defense and indemnity in the *Garcia-Vega* Action.  By email dated February 13, 2018, Liberty Mutual's counsel confirmed that Armadillo was agreeing to accept the other 50% share of Mr. Margaretic's defense and indemnity. Travelers was not included or consulted about these communications.

On February 19, 2018, Liberty Mutual emailed Travelers to confirm that it would not pay half of the defense and indemnification of Mr. Margaretic because Armadillo, through Taft, had already agreed to fully defend and indemnify him.  Exh. 10 at LMI0117–0118.  Over the next few months, Travelers made further attempts to obtain Liberty Mutual's coordination in Mr. Maragretic's defense, but Liberty Mutual maintained its position.  According to Travelers, it did not learn that Armadillo was indeed paying the portions of Mr. Margaretic's defense and indemnification that

Travelers had refused to pay until the amended complaint was filed in this action and communications regarding the *Garcia-Vega* Action were disclosed in the course of discovery in this lawsuit.

### C.     Settlement of Claims Against Mr. Margaretic

A first mediation of the *Garcia-Vega* Action was held on June 25, 2018. At mediation, Mr. Garcia-Vega agreed to dismiss Mr. Margaretic and the Texas Roadhouse entities for $95,000. Of that settlement, Travelers paid $60,000 and Armadillo paid the remaining $35,000 on behalf of Mr. Margaretic and agreed to remediate certain outstanding ADA violations. Armadillo requested that Travelers reimburse it for the cost of Mr. Margaretic's defense and indemnity under the "insured contract" provision of the Policy but Travelers refused, maintaining its position that the "additional insured" endorsement applied to limit its coverage to fifty percent of Mr. Margeretic's defense and indemnification.

After this settlement, Armadillo was the only defendant remaining in the *Garcia-Vega* Action.

### IV.     Travelers's Defense of Armadillo and Settlement of Claims

### A.     The Tender of Armadillo's Defense

As noted above, Armadillo was added as a defendant in the *Garcia-Vega* Action on December 11, 2017. One week later, on December 18, 2017, Mr. Meyer from Taft notified Travelers's Claim Professional, Mr. Tancredy, that Armadillo had been named as a defendant in the *Garcia-Vega* Action and that Armadillo had retained the Taft firm to represent it in the litigation. Exh. 5 at TRAV_001698. On December 27, 2017, Travelers

11

notified Armadillo's Taft counsel that it had retained attorney Joseph Strella of the law firm Clapp, Moroney, Vucinich, Beeman & Scheley, which is panel defense counsel for Travelers, to defend Armadillo in the *Garcia-Vega* Action. *Id.* at TRAV_001697.

On January 4, 2018, Travelers issued a reservation of rights letter to Armadillo stating that certain statutory damages alleged in the underlying litigation might be excluded from coverage by the exclusion in the Policy related to bodily injury resulting from discrimination. Specifically, Travelers informed Armadillo that the exclusion might bar coverage for "any of [Mr. Garcia-Vega's] damages that may arise or flow from any alleged discrimination due to the Insureds' failure to provide equal and safe access to handicapped persons in accordance with statutory requirements." Exh. I at TRAV_000958. In other words, Travelers reserved its right to deny coverage arising from violations of the ADA, the Unruh Act, or the DPA. Despite these potential coverage issues, Travelers agreed to fully defend Armadillo against all causes of action in the *Garcia-Vegas* Action, but advised Armadillo that "since there are damages alleged that may not be covered under the Policy, the Insured has the right to associate counsel of choice, at their own expense, to represent them with respect to any personal exposure, should they so desire." *Id.* at TRAV_00958.

On January 17, 2018, Armadillo, through Taft counsel, objected to Traveler's reservation of rights on grounds that it created an "inherent conflict of interest" that required Travelers to pay for independent counsel of Armadillo's choosing. In response, Mr. Tancredy, the Claims Professional assigned to Armadillo's defense, advised Armadillo's Taft counsel that Travelers was evaluating the objection and would respond

accordingly. Meanwhile, Travelers continued to fully defend Armadillo in the *Garcia-Vega* Action.

On February 26, 2018, Armadillo filed the instant action, seeking an order enjoining Travelers from retaining panel counsel to defend Armadillo and requiring Travelers to pay for independent counsel to defend Armadillo in the *Garcia-Vega* Action.

On March 5, 2018, Travelers revised its reservation of rights and informed Armadillo that it would pay for all bodily injury damages in the *Garcia-Vega* Action, regardless of whether such damages arose out of negligence or a violation of the ADA or the California anti-discrimination statutes. Travelers maintained its reservation of rights for non-bodily injury damages arising from violations of those statutes, such as attorney fees and statutory penalties. Exh. J at TRAV_000629. Specifically, the reservation of rights letter provided in relevant part as follows:

> As you are aware, the complaint filed by [Mr. Garcia-Vega] alleges injury based upon premises liability … and violations of the ADA—which is a law based upon discrimination against the handicapped. [Mr. Garcia-Vega] could prevail on the bodily injury claim by showing only a premises defect without showing the Insured acted with discriminatory intent. Such a claim would clearly be covered under the policy. If [Mr. Garcia-Vega] were also able to prove that the insured acted with discriminatory intent, then he would be able to recover not only damages for his bodily injury but also penalties under the ADA, such as attorney fees and other statutory penalties that arise from discrimination. Damages flowing from discrimination would not be covered. However, Travelers will cover <u>all</u> claims for "bodily injury" damages, and is not reserving its rights regarding those damages.

*Id.*

A few days after receiving this communication, Mr. Meyer and Blake Burgan of Taft appeared for Armadillo in the *Garcia-Vega* Action. On March 9, 2018, Armadillo,

through Taft, advised Travelers that it would not consider the conflict of interest issue resolved unless Travelers would agree to "cover all damages for 'bodily injury,' even those damages awarded pursuant only to a violation of the California Disabled Person's Act and the Unruh Civil Rights Act (which incorporate violations of the ADA)" and to define "discrimination" to "include only a violation of the ADA, California Disabled Person's Act, and the Unruh Civil Rights Act …."  Exh. 17.  Although Travelers informed Taft that it would agree to both, Taft attorneys continued to participate in Armadillo's defense in the *Garcia-Vega* Action until the case was settled.

### B.      Settlement of Claims Against Armadillo

A second mediation in the *Garcia-Vega* Action was conducted on September 26, 2018, in an effort to settle all outstanding bodily injury and ADA claims against Armadillo, including Mr. Garcia-Vega's claim for attorney fees.  In addition to Travelers, Zurich American Insurance Company ("Zurich") also attended the mediation because it had issued Armadillo a management liability insurance policy, Policy No. MPL 0083289-03 ("the Zurich Policy"), that provided coverage for third-party discrimination liability, including all related statutory damages.  To trigger coverage under the Zurich Policy, Armadillo was required to satisfy a self-insured retention of $100,000.00, which Zurich's records show was exhausted by Taft's defense costs in the *Garcia-Vega* Action as well as the $35,000.00 Armadillo paid toward settlement of Mr. Garcia-Vega's claims against Mr. Margaretic.  The *Garcia-Vega* Action settled shortly after mediation for $360,000.00, with Travelers and Zurich each paying $180,000.00.

The final settlement and release of the *Garcia-Vega* Action was signed by all parties and their counsel, including the Taft firm, and the lawsuit was dismissed, with prejudice, on December 14, 2018.

## V.   The Instant Litigation

This action was litigated contemporaneously with the *Garcia-Vega* Action until the latter case settled. Armadillo filed its original complaint in this action on February 23, 2018, alleging that Travelers had breached its obligations under the Policy and breached its duty of good faith and fair dealing by failing to authorize Armadillo to select its own counsel at Traveler's expense following Traveler's election to defend under a reservation of rights. In response, Travelers revised its reservation of rights, clarifying that it would pay all "bodily injury" damages, but reserving its right to deny coverage on non-bodily injury damages, such as statutory penalties and attorney fees, arising from discriminatory conduct.

After Travelers revised its reservation of rights, Armadillo then amended its complaint on May 8, 2018, eliminating any claim that it was entitled to independent counsel based upon a conflict of interest and adding the following claims: (1) that Travelers breached its obligations under the Policy by failing to recognize the Lease as an "insured contract" that required Travelers to fully defend and indemnify Mr. Margaretic; (2) that Travelers breached its obligations under the Policy by reserving its right to deny coverage as to non-bodily injury statutory damages; and (3) that Travelers breached its duty of good faith and fair dealing by unreasonably refusing to defend Mr. Margaretic in

full and unreasonably denying coverage for statutory damages in the *Garcia-Vega* Action.

Now before the Court is Armadillo's motion for partial summary judgment on its breach of contract claims and Travelers's cross-motion for summary judgment on all claims.

## **Legal Analysis**

### I.      **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Because these are cross-motions for summary judgment and the same Rule 56 standards apply, our review of the record requires us to draw all inferences in favor of the party against whom a particular issue in the motion under consideration is asserted. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II.    Discussion

### A.    Breach of Contract – Mr. Margaretic's Defense

We turn first to Armadillo's claim that Travelers breached the Policy by failing to reimburse Armadillo for the full defense and indemnity of its landlord, Mr. Margaretic. Specifically, Armadillo argues that Mr. Margaretic was entitled to coverage not only as an additional insured, as recognized by Travelers, but also as a party to an "insured contract," to wit, the Lease, which contained an indemnification provision requiring Armadillo to defend and indemnify Mr. Margaretic for all injuries occurring on the Property, other than those caused by the intentional or negligent acts or omissions of the landlord and his employees.  Armadillo claims that, because no such intentional or negligent acts or omissions on the part of Mr. Margaretic caused Mr. Garcia-Vega's injuries, Travelers should have fully defended and indemnified Mr. Margaretic pursuant to the "insured contract" provision of the Policy but instead breached the Policy by failing to recognize the Lease as an "insured contract" and instead provided coverage for Mr. Margaretic only as an additional insured.

The facts adduced here show that Travelers did not fail to recognize that the Lease constituted an "insured contract" under the Policy.  Rather, Travelers properly acknowledged its duty to recognize Mr. Margaretic as an additional insured under the Policy and proceeded to assess priority of coverage issues related to that provision, having determined that, based on conflicting "other insurance" provisions in the Travelers' Policy and Mr. Margaretic's primary insurer, Liberty Mutual's Policy, the two insurance companies were obligated to provide coverage on a co-primary basis.  We do

not understand Armadillo to take issue with these actions in and of themselves as Armadillo puts forth no developed argument that it was improper for Travelers to recognize its duties to Mr. Margaretic as an additional insured or that Travelers improperly assessed the priority of coverage issues related to the additional insured endorsement.

Rather, Armadillo claims that Travelers breached the Policy by failing to recognize its separate duties to Mr. Margaretic in relation to contractual indemnity. We disagree. Travelers never expressed that it was not recognizing the Lease as an "insured contract" under the Policy, only that that fact alone was not dispositive of Travelers's defense and coverage obligations and that it believed that Armadillo had potentially viable defenses against Mr. Margaretic's contractual indemnity claim that it wanted to investigate. However, when it attempted to raise these potential liability defenses to Liberty Mutual and Mr. Margaretic's counsel, Travelers was advised that Armadillo had already accepted Mr. Margaretic's full defense and indemnity. Although Armadillo initially reserved its rights to rescind its acceptance if new facts were discovered that might negate its obligations, it subsequently informed both Mr. Margaretic's counsel and Liberty Mutual, again without Travelers's knowledge or consent, that it would cover all of Mr. Margaretic's defense and indemnification costs not covered by Travelers.

While it is not clear whether the potential liability defenses raised by Travelers (namely, that Mr. Margaretic may have had a nondelegable duty to ensure that the Property maintained compliance with ADA and California anti-discrimination statutes, any breach of which Armadillo would not have been responsible for indemnifying) would

have ultimately proved successful, by its own actions, Armadillo effectively waived any potential liability defenses that might have limited its own and Travelers's exposure, without consulting Travelers. Accordingly, Travelers lost its opportunity to explore and pursue such options. Under these circumstances, Armadillo cannot now hold Travelers liable for unilateral choices Armadillo itself made, particularly given its duty under the Policy to consult and cooperate with Travelers in the conduct of its defense and to refrain from voluntarily assuming any obligation or incurring any expense without Travelers's consent. *See* Dkt. 63-5 at 1047–48. Travelers is therefore entitled to summary judgment on Armadillo's claim that Travelers breached the Policy by failing to reimburse more than 50% of Mr. Margaretic's defense and indemnification costs.

### B.  Breach of Contract – Revised Reservation of Rights

Armadillo next claims that Travelers breached the Policy by refusing to provide coverage for statutory damages, other than actual damages for bodily injury, awarded in the *Garcia-Vega* Action. Specifically, Armadillo argues that the only access violation at the Tracy Roadhouse that Mr. Garcia-Vega alleged he had personally encountered or by which he was "deterred" was the hole in the concrete of the accessible ramp where he fell after the wheel of his walker became stuck. He sought damages for the physical injury he suffered as a result of the fall as well as a trebling of the amount of his compensatory damages under the anti-discrimination statutes. Armadillo argues that any statutory damages to which Mr. Garcia-Vega was entitled pursuant to the ADA and/or California anti-discrimination statutes were therefore directly tied to the personal injury he suffered from his fall and constituted "damages because of … bodily injury" under the Travelers

CGL Policy.  Accordingly, Armadillo claims that Travelers's reservation of rights as to statutory damages constituted a breach of its obligations under the Policy and rendered coverage under the Policy illusory.

The allegations in the *Garcia-Vega* Action were broader than Armadillo portrays here, however.  In addition to the hole in the accessible ramp, Mr. Garcia-Vega alleged that he was "informed and believes, and based thereon alleges, that there are other inaccessible facilities, features, elements, and conditions on or near The Property all of which prevent [him] from returning in violation of State and federal law."  Dkt. 63-1 ¶ 1.  Mr. Garcia-Vega further alleged that he was "denied full and equal enjoyment of and access to Defendants' goods, services, facilities, privileges, advantages or accommodations" in violation of the ADA based upon the existence of "specific barriers," including the hole in the accessible ramp, and "other barriers" at the Tracy Roadhouse.  *Id.* ¶¶ 29, 32, 36.  He claimed that he "has been deterred from returning to The Restaurant due to the lack of accessible paths of travel and other access violations and thus continues to suffer denial of his civil rights to full and equal access to The Restaurant."  *Id.* ¶ 26.  Mr. Garcia-Vega also alleged that each ADA violation constituted a violation under the California anti-discrimination statutes, "independently justifying an award of damages and injunctive relief pursuant to California law."  *Id.* ¶ 48.  Finally, Mr. Garcia-Vega alleged that "[o]ther access barriers may exist" at the Property and that he would seek leave to amend his complaint after a site survey of the premises was conducted by his access consultant.  *Id.* ¶ 36.

We agree with Armadillo that the hole in the concrete of the accessible ramp is the only access barrier that Mr. Garcia-Vega alleged he personally encountered. However, under the Unruh Act, "statutory damages for construction-related violations are available under two circumstances: (1) if a plaintiff encountered the violation on a particular occasion *or* (2) if a plaintiff was deterred from accessing a place of public accommodation on a particular occasion." *Yates v. Vishal Corp.*, No. 11-cv-00643-JCS, 2013 WL 6073516, at *3 (N.D. Cal. Nov. 18, 2013) (citing Cal. Civ. Code § 55.56(b)) (emphasis added). While Armadillo is correct that, as to the first circumstance, a plaintiff must have experienced "difficulty, discomfort, or embarrassment" as a result of the violation in order to recover damages, all of which would be considered "bodily injury" under the Policy, we find no such requirement for recovery under the second circumstance. *See id.* Because Mr. Garcia-Vega's complaint alleges violations based not simply on encountered barriers, to wit, the hole in the concrete, but also on grounds of deterrence and "other barriers" at the Property which he did not personally encounter and which do not appear to require proof of "difficulty, discomfort, or embarrassment" for recovery, Travelers's reservation of rights as to statutory damages separate from "bodily injury" damages was not unreasonable or a breach of the Policy, given the breadth of the allegations in the *Garcia-Vega* Action.

The *Garcia-Vega* Action eventually settled with Travelers paying half of the settlement proceeds and Zurich, with whom Armadillo held a management life insurance policy that included coverage for discrimination claims, including related statutory damages, contributing the other half. Armadillo argues that, because Mr. Garcia-Vega

never amended his complaint to specifically identify any access barriers beyond the hole in the concrete, any potential violations related to unencountered barriers ultimately were not actionable. Thus, Armadillo claims that Travelers should have been responsible for fully indemnifying Armadillo in the settlement of the *Garcia-Vega* Action, preventing it from having to satisfy the Zurich policy's $100,000 self-insured retention. This argument, however, is belied by the fact that more than 140 access violations were discovered at the Property in addition to the barrier that Mr. Garcia-Vega personally encountered, and those violations were considered and addressed in the ongoing investigation and negotiation of the settlements in the *Garcia-Vega* Action. Moreover, Armadillo's independent defense counsel were themselves aware of and involved with these negotiations and ultimately signed off on the settlement. Because the settlement funds were never apportioned or allocated between "bodily injury" or "statutory" damages, it is an impossible task for the court to now attempt to parse what types of damages were considered in settling the *Garcia-Vega* Action. In any event, given the broad allegations set forth in Mr. Garcia-Vega's complaint in the underlying litigation, we hold that Travelers did not breach the Policy by reserving its rights as to statutory damages. Travelers is therefore entitled to summary judgment on this breach of contract claim.

### C.      Breach of Duty of Good Faith and Fair Dealing

Travelers has moved for summary judgment on Armadillo's breach of duty of good faith and fair dealing claim. Having found for the reasons detailed above that Travelers did not breach the Policy, in similar fashion we find that Travelers did not

make an "unfounded refusal to pay policy proceeds" or otherwise take an "untenable coverage position" with regard to coverage for either Mr. Margaretic or Armadillo. Armadillo also claims that Travelers's handling of the *Garcia-Vega* Action was "fraught with missteps" and that Travelers did not dedicate the appropriate time and analysis to the defense and coverage issues. The facts, however, establish that Travelers was involved in the full defense, investigation and evaluation of the *Garcia-Vega* Action, attended the mediations and participated in all settlement negotiations, and settled the case with Armadillo's and its independent defense counsel's consent and approval. This extensive participation does not support Armadillo's claimed breach of the duty of good faith and fair dealing by Travelers. Accordingly, Travelers is entitled to summary judgment on Armadillo's bad faith claim.

## III.    Conclusion

For the reasons detailed above, Plaintiff's Motion for Partial Summary Judgment [Dkt. 61] is <u>DENIED</u> and Defendant's Motion for Summary Judgment [Dkt. 65] is <u>GRANTED</u>. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:    4/1/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
bburgan@taftlaw.com

Ann O. McCready
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
amccready@taftlaw.com

Michael Lawrence Meyer
TAFT STETTINIUS & HOLLISTER LLP (Cincinnati)
mmeyer@taftlaw.com

Meghan Eileen Ruesch
LEWIS WAGNER LLP
mruesch@lewiswagner.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com